Note.—Reported in 203 N. W. 457.  See, Headnote (1), American Key-Numbered Digest, Specific performance, Key-No. 121 (9), 36 Cyc. 786 (1926 Anno.); (2) Evidence Key-No. 186(6), 22 C. J. Sec. 1379; (3) Specific performance, Key-No. 119, 36 Cyc. 786 (1926 Anno.); (4) Specific performance, Key-No. 121(10), 36 Cyc. 786 (1926 Anno.); (5) Specific performance, Key-No. 96, 36 Cyc. 707 (1926 Anno.).

---

McCAULL-DINSMORE COMPANY, Respondent, v. HEYLER, Appellant.

(203 N. W. 505.)

(File No. 5261.   Opinion filed April 18, 1925.)

1. **Appeal and Error—Verdict—Conflicts in Evidence Resolved in Respondent's Favor by Verdict.**

   Jury's verdict resolves all conflict in evidence on issue as to mutuality of contract in respondent's favor, and Supreme Court need only determine sufficiency thereof.

2. **Sales—Contracts—Findings—Finding of Mutuality Held Supported by Evidence.**

   Evidence of giving and acceptance of orders for hay held to sustain verdict for plaintiff on issue of mutuality of contract, in buyer's action for failure to deliver.

3. **Frauds, Statute of — Evidence — Evidence of Part Performance Necessary to Avoid Statute, in Absence of Payment or Written Memorandum.**

   To take transaction out of statute, in absence of payment or written memorandum signed by parties at time, there must be evidence of part performance.

4. **Appeal and Error—Instructions—Presumptions—Court Presumed to Have Properly Instructed Jury, in Absence of Exceptions.**

   In absence of exceptions to instruction, Supreme Court must presume that trial court properly instructed jury as to necessity and character of part performance required to take transaction out of statute of frauds.

5. **Sales—Evidence—Evidence Held Not to Show Commission Deal Between Parties to Sale of Hay.**

   Evidence held to show purchase of hay for resale by buyer, not brokerage or commission deal.

6. **Sales—Contracts—Contract for Sale of 89 Carloads of Hay Held Not Void for Uncertainty in Measure.**

   Contract to purchase 89 carloads of hay held not void for uncertainty, because of difference in sizes of cars; seller having

right to order size of cars he saw fit, or could get, of character usually employed for such shipments.

7. Sales—Contracts—Contract to Furnish 89 Cars of Hay at Different Prices Held Not Void for Uncertainty.

Contract to furnish 89 cars of hay at $18 f. o. b. S., or $17.50 f. o. b. B., held not void for uncertainty of price; seller having option to ship from either point.

8. Sales—Instructions—Instruction as to Buyer's Right to Recover Difference Between Contract Price and Price Paid for Undelivered Hay Held Not Error.

Instruction as to buyer's right, under certain circumstances, to recover difference between contract price of undelivered hay and price paid by seller held not error.

9. Evidence—Witnesses—Statement of Witness, Having Copies of Orders and Bills of Shipments, as to Number of Cars Not Filled, Held Not Conclusion.

Statement of witness, having copies of orders and bills of shipments, that there were 89 cars not filled, held not subject to motion to strike as conclusion, though not responsive to question.

10. Evidence—Witnesses—Question Whether Witness Knew How Many Cars Were Shipped at Certain Price Held Not to Call for Conclusion.

Question whether witness knew how many cars of hay were shipped at certain price held not to call for conclusion.

11. Witnesses—Trial—Testimony as to How Many Cars Were Shipped Held Not Responsive to Question.

Testimony as to how many cars of hay were shipped held not responsive to question as to whether witness knew how many were shipped.

12. Sales—Evidence—Testimony as to Efforts to Buy and Prices Paid for Hay to Replace That Not Delivered Held Relevant.

Testimony as to witness' efforts to buy hay to replace that not delivered under contract, and prices he had to pay in vicinity of points from which seller agreed to ship, held relevant.

Appeal from Circuit Court, Brown County; Hon. B. A. WALTON, Judge.

Action by the McCaull-Dinsmore Company against Harry G. Heyler. From a judgment for plaintiff, and denial of a new trial, defendant appeals. Affirmed.

*McNulty & Campbell*, of Aberdeen, for Appellant.

*George H. Fletcher* and *Ezra L. Baker*, both of Aberdeen, for Respondent.

(6) and (7)   To points six and seven of the opinion, Appellant cited: ·Elmore Quillan & Company v. Parish Brothers, 190 Ala. 499, 54 So. 203; Ogden v. Parsons, 23 How. 167, 16 L. ed. 410; 2 Ency. of Evidence 850; South and N. Alabama R. R. Co. v. Wood, 74 Ala. 449; Oakland Motor Car Co. v. Indiana Automobile Co., 201 Fed. 449, 121 C. C. A. 319; Jules Levy & Brother v. A. Mautz & Co., 16 Cal. 666, 117 Pac. 936.

Respondent cited:   Bullock v. Finley, 28 Fed. 514; 34 Cyc. 210.

MORIARTY, Circuit Judge.   This action is now before this court for the second time. The first appeal was taken by the plaintiff, respondent herein, from a judgment entered upon a directed verdict in favor of the defendant, the appellant herein. The decision of this court upon said former appeal is found in 44 S. D. at page 418, 184 N. W. 243, and said decision contains a statement of the case. For the sake of avoiding unnecessary repetition, the statement contained in said former decision is hereby referred to as a sufficient statement for the purposes of this second appeal.

Upon the said former appeal this court reversed the trial court, and held that there was error in directing a verdict for the defendant. In its opinion upon said former appeal we said that the case should have gone to the jury upon three issues of fact: First, whether any contract such as that alleged by plaintiff had been entered into by the parties; second, whether the supplemental contract alleged by plaintiff, and relied upon to furnish the element of mutuality, was actually entered into on November 26, 1919; third, whether the two cars of hay, which were consigned to the plaintiff by the defendant at $17.50 per ton, were shipped pursuant to, and as part performance of, the contract alleged by the plaintiff.

After the decision of this court was handed down, the action was retried, and the jury rendered a verdict in favor of the plaintiff. Upon that verdict judgment was entered in the trial court. The defendant presented to the trial court a motion for a new trial, which motion was denied. From the judgment so entered, and from the order denying a new trial, the defendant, who will hereafter be referred to as the appellant, has taken this appeal.

This court having decided upon the previous appeal that the

evidence presented questions of fact, which should go to the jury, it is apparent that, unless the evidence at the second trial varies materially from that presented at the first trial, the only question for this court on this second appeal is whether the trial court erred in its rulings on questions of evidence or in its instructions to the jury.

In summarizing their argument upon this appeal, the appellant's counsel state their contentions practically as follows: First, that the alleged contract of sale is void for want of mutuality; second, that said alleged contract is void under the statute of frauds; third, that the alleged contract was not a contract to buy and sell, but an employment of the plaintiff as a broker or commission merchant, and that no measure of damages under a contract of that character has been established; fourth, that the alleged contract is so indefinite as to price, quality and quantity of hay to be furnished as to be invalid. We will take up these contentions in the order stated.

[1] (1) It is the theory of respondent that mutuality was given to the contract by the negotiations between the parties on November 26th. There is conflict in the evidence as to the conversations had between appellant and the respondent's agent on that day. But the verdict of the jury resolves all conflict in respondent's favor, so this court need go no further than to determine whether there is evidence of transactions sufficient to confer mutuality upon the alleged contract.

[2] There is such evidence. Mr. Trask testified:

"We gave him these orders by telephoning first and then we sent him the billing instructions through the mail. Every time we sold anything we telephoned it to him. They said all right we will attend to the order. After I had telephoned I would make out the billing instructions and send them by mail to him—the number of cars there were and the destination and the instructions where to draw on us."

Again the witness Trask testified:

"Mr. Heyler came to the office on the 26th of November, 1919. I went over the orders which we had sent to him. We had a list and we checked it over together. He told me not to sell any more but he would fill the orders we had on."

In the evidence of Celia Hawes said witness testified:

"Mr. Heyler was up there at different times. He was there a number of times. I remember his coming there on November 26th. He came up that day. I had made out a slip where we wanted the cars to go and we checked them over with Mr. Trask and he said they were all right; that he would get out all the cars we sold up to and including that day, but not to sell any more until he got these cars shipped. There were 89 cars on the list including the cars sold that day."

This evidence, if believed by the jury, was ample to show the giving and acceptance of orders for the 89 cars of hay.

[3, 4]   (2) As to the statute of frauds: Conceding that there is evidence tending to show that there was a giving and acceptance of orders on November 26th, there was no payment made at that time, nor was there any written memorandum of the agreement signed by the parties. Therefore, in order to take the transaction out of the prohibition of the statute, there must be evidence to show a part performance of the contract. It is not disputed that appellant consigned some hay to respondent after November 26th. There is some evidence that nine cars were so consigned. There is an entire absence of any evidence on the part of appellant as to why he consigned this hay to respondent unless there was some agreement as to such consignment. He says he consigned the hay at the market price of the day of shipment, that he drew on the respondent for the price of the hay and that the drafts were paid. But he gives no explanation of his reason for making any such consignments. It is conceded that two cars of hay were so consigned from Beebe at $17.50 per ton, and that this consignment was made after November 26th. The jury had a right to consider these matters, and, in the absence of any exceptions to the instructions covering that point, we must presume that the court properly instructed the jury as to the necessity and character of part performance required to take the transaction out of the prohibition of the statute of frauds.

[5]   (3) As to the contention, that the transaction between the parties was a brokerage or commission deal, the evidence does not support that theory. It is apparent that neither of the parties to the transaction treated the deal as a commission deal. There

was no agreement as to the payment of any commission. The appellant admits that he consigned hay to respondent as early as August and September, 1919, but no report of any such deals was ever required of the respondent, nor did respondent demand any commission on them.

It is very evident that both parties understood that respondent was buying the hay and selling it relying upon the difference between the buying price and the selling price for its profits, as other middlemen do.

Although appellant, in support of this contention that the deal was a commission deal, says that he did not agree to sell hay to respondent—that he merely told respondent's agent to find buyers for his hay—he cannot eradicate from his mind what his real understanding was. Thus we find, that appellant testified:

"I sold some hay to McCaull-Dinsmore. I sold some hay to McCaull-Dinsmore in September. I don't recollect how many cars I sold. I charged them $17.50 for second grade hay."

Again he testified:

"Trask wanted to buy hay. He was continually wanting to buy hay of me. I did not tell him I would sell him hay if he paid me more money. He told me he wanted to buy hay of me. I gave him a price when he designated a place."

These statements by appellant are entirely inconsistent with the theory of a brokerage or commission deal between himself and respondent.

[6]  (4) As to appellant's contention that the alleged contract is void for uncertainty: Counsel say that some cars are large and some small and that, therefore, the carload is not a measure sufficiently definite to support a contract to deliver personal property. Whatever of uncertainty there may be in such measure would merely result in giving the appellant an option as to such elasticity of measurement. If he agreed to furnish a certain number of carloads f. o. b., he would have the right to order the size car he saw fit, or could get, of the character usually employed for such shipments. The respondent would have no right to reject the consignment, either because the car was a large one or a small one. There is no uncertainty in the measure sufficient to avoid the contract.

[7]  Counsel for appellant further contend that there was not

a certainty as to the price of the hay sufficient to support a valid contract. They say that respondent might see fit to order shipments from a point where the price was to be $17.50 per ton or from a point where it was to be $18 per ton, and therefore the contract is void. But there is nothing to indicate that respondent had any such option. The record shows that the manner of transacting the business was for the respondent to designate the place to which the shipment was to go; it was evidently left to the appellant to determine the point from which he should ship. He evidently considered any hay he might have at Summit to be of little greater value than what he might chance to have ready for shipment at Beebe. If he agreed to furnish 89 cars of hay at $18 f. o. b. Summit, or $17.50 f. o. b. Beebe, consignments from either place would comply with his contract. Evidently it was contemplated that there might be demand for hay from different directions, and appellant considered hay at Summit more valuable than at the other points. He should not be allowed to avoid his contract because it comprehended such difference in value, and he had the option to ship from either of the points at which prices were quoted.

[8]  (5) There remains only the question whether there was prejudicial error in the rulings of the learned trial judge upon questions of evidence or in his instructions to the jury. As to appellant's contention that the trial court erred in instructing the jury as to respondent's right under certain circumstances to recover the difference between the alleged contract price at which the hay was to be furnished and the price for which appellant drew upon respondent, all the argument of appellant is based upon the theory that there was no binding contract to deliver the hay at a stated price. If there was such contract, then respondent had the right to recover any excess paid above such contract price. To sustain their contention that there is error in the instruction excepted to, appellant's counsel are compelled to assume that no shipments were made under the contract, which was the very question the court was submitting to the jury. There is no error in the instructions excepted to.

[9]  As to the trial court's rulings on questions of evidence: Appellant's counsel contend that the trial court should have granted their motion to strike out the answer of the witness Trask:

· "We checked it up, and there were 89 cars that were not filled at that time."

The motion was to strike out the answer as a conclusion of the witness. It is true that the answer was not responsive to the question asked, and should have been stricken upon such objection. But if the witness had copies of the orders and bills of the shipments made, his statement was one of fact and not a conclusion.

[10, 11]   As to the question: "Do you know how many were shipped at $17.50?" This was objected to as calling for a conclusion of the witness. It does not call for a conclusion, but for an answer by yes or no, as to whether the witness had such knowledge. The answer was not responsive, in that it purported to state how many cars had been shipped, instead of stating whether the witness knew. There was no motion to strike the answer and no error in the court's ruling.

[12]   As to the several questions asked of the witness Trask concerning his efforts to buy hay to replace that which respondent contends that appellant failed to deliver under his contract: These questions were objected to as irrelevant and immaterial, and the objections were overruled. These questions were asked to elicit evidence as to efforts made to secure hay to fill the orders, and to show the price in the vicinity of the points from which it is alleged that appellant agreed to ship the hay.

The witness testified that when he was told that appellant would not deliver the hay, he immediately notified the Minneapolis office and went out and tried to fill the contracts elsewhere. He says that after that he bought hay on the market, that he tried to buy hay in the vicinity of Beebe, and bought some at Forbes and in the vicinity of Summit, and he says that he bought at these points as cheaply as he could. From these efforts and experiences he testified as to the prices he had to pay for hay and as to the market price. These matters were relevant, and there was no error in overruling the objections.

Finding no error in the record, the judgment and order appealed from are affirmed.

MORIARTY, Circuit Judge, sitting in lieu of CAMPBELL, J., disqualified.